# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:17-CR-394** |
| v. | : | (Chief Judge Conner) |
| **XIAO WU ZHOU,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Xiao Wu Zhou ("Zhou") moves the court to compel specific discovery concerning the propriety of a traffic stop and subsequent search of his vehicle on October 31, 2017. (Doc. 63). We will deny Zhou's motion.

## I. Factual Background & Procedural History[1]

Trooper Jeremy Hoy ("Trooper Hoy") is a Pennsylvania State Police trooper assigned to the Central Shield Unit of the Bureau of Criminal Investigation's Drug Law Enforcement Division. United States v. Xiao Wu Zhou, No. 4:17-CR-394, 2018 WL 1858187, at *1 (M.D. Pa. Apr. 18, 2018). On the afternoon of October 31, 2017, Trooper Hoy noticed a U-Haul truck driven by Zhou traveling slower than the flow of traffic on Interstate 80. Id. Trooper Hoy then witnessed Zhou cross the white fog line three times. Id. After initiating a traffic stop, Trooper Hoy explained to Zhou and his passenger, codefendant Chuanze Xu ("Xu"), that he pulled them over for

---

[1] The court issued a memorandum opinion and order on defendants' motion to suppress evidence seized during the traffic stop on October 31, 2017, familiarity with which is presumed. See United States v. Xiao Wu Zhou, No. 4:17-CR-394, 2018 WL 1858187 (M.D. Pa. Apr. 18, 2018). We reiterate certain facts pertinent to the instant motion in the following factual narrative. We cite to the official transcript (Doc. 56) and suppression hearing exhibits—abbreviated as "Ex."—as needed.

crossing the fog line (a traffic infraction under 75 PA. CONS. STAT. § 3309) and out of concern that Zhou was falling asleep or intoxicated (a violation of 75 PA. CONS. STAT. § 3802). Id.

During the short investigative traffic stop, Trooper Hoy developed reasonable suspicion that defendants were engaged in criminal activity. When Trooper Hoy approached defendants for identification, he observed evidence indicative of "hard travel" in the U-Haul cabin.[2] Id. Xu explained that they were moving a two-story, single family house in the small U-Haul from California to New York and that the cargo area contained only five "briefcases" containing bed sheets. Id. at *2. Zhou stated that he and Xu drove out to California together, directly contradicting Xu's response that they flew. Id. Trooper Hoy observed each defendant's heightened physical nervousness, multiple cell phones, and the lack of personal luggage for a multi-day trip. Id. After defendants withheld consent to search the cargo area, Trooper Hoy requested a canine unit to conduct a dog sniff. Id.

Trooper Aaron Tiracorda ("Trooper Tiracorda") and Canine Tom responded to Trooper Hoy's request for a canine unit. (Doc. 56 at 24:10-13; Ex. 4 at 7). Canine Tom alerted to the presence of narcotics at the "right rear cargo area" of the U-Haul truck. (Doc. 56 at 26:6-9, 50:22-24). Trooper Hoy opened the cargo area door and

---

[2] Trooper Hoy defined the term "hard travel" as driving for long periods of time without stopping overnight, sleeping in one's vehicle and alternating drivers, and using energy drinks to stay awake. Zhou, 2018 WL 1858187, at *1 n.2. Individuals trafficking in illegal drugs often engage in "hard travel" to move the contraband quickly and to avoid renting a hotel room which requires leaving the drugs unattended. Id.

2

discovered five suitcases, nine large plastic bags, and 33 cardboard boxes all containing vacuum-sealed packages of marijuana. Zhou, 2018 WL 1858187, at *3. He then arrested defendants. Id.

A federal grand jury returned a two-count indictment charging Zhou and Xu with one count of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (Count 1) and one count of distribution and possession with intent to distribute marijuana in violation of 18 U.S.C. §§ 841(a)(1) and 2 (Count 2). Zhou and Xu each pled not guilty to both counts. Following a suppression hearing on March 2, 2018, the court issued a memorandum opinion and order denying defendants' motion to suppress evidence seized during the October 31, 2017 traffic stop. Zhou now moves to compel specific discovery pursuant to Federal Rule of Criminal Procedure 16. The motion is fully briefed and ripe for disposition.

## II. Discussion

Zhou seeks two types of discovery materials in his motion to compel. *First*, Zhou requests production of statistics pertaining to traffic stops conducted by officers of the Pennsylvania State Police Central Shield Unit. (Doc. 63 at 7). He suggests that these statistics may show that he was "subjected to discrimination and stopped because he looked like the stereotypical drug transporter." (Id.) *Second*, Zhou seeks production of documents pertaining to the training and certification of Canine Tom and his handler, Trooper Tiracorda, as well as records of past canine searches they performed. (Id. at 6-7; see also Doc. 63-1 ¶ 6). Zhou avers that prior counsel failed to move to suppress evidence based on "apparent deficiencies in the

3

use, direction and response of [Canine Tom]." (Doc. 63 at 2). We address these requests *seriatim*.

### A. Pennsylvania State Police Central Shield Unit Statistics

An officer may stop a vehicle if the officer has reasonable suspicion to believe that a traffic violation has occurred. Heien v. North Carolina, 574 U.S. __, 135 S. Ct. 530, 536 (2014); United States v. Delfin-Colina, 464 F.3d 392, 396-97 (3d Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). An officer's pretextual motivations for initiating the stop are irrelevant so long as the officer witnessed "*any* technical violation of a traffic code." United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006) (emphasis added) (citations omitted); Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 440 (3d Cir. 2005), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). Searches and seizures based on mistakes of fact or law can be objectively reasonable. Heien, 135 S. Ct. at 536, 539.

Trooper Hoy had a reasonable basis to conduct a brief, investigatory stop of Zhou's U-Haul. Specifically, the court determined that crossing the fog line in violation of Section 3309—prohibiting unsafe lane changes and mandating that vehicles be driven "as nearly as practicable entirely within a single lane"—supported Trooper Hoy's reasonable suspicion. Zhou, 2018 WL 1858187, at *3 (quoting 75 PA. CONS. STAT. § 3309(1)). To the extent that Zhou's driving did not constitute a violation of Section 3309 under Pennsylvania case law, the court found Trooper Hoy's mistake of law reasonable and further noted that he had an independent reasonable justification for the traffic stop, *viz.*, that Zhou might be

4

intoxicated.  Id. at *3-4.  These lawful justifications for Trooper Hoy's traffic stop moot any pretext argument based on racial discrimination and Central Shield Unit statistics.  See United States v. Griggs, 114 F. Supp. 2d 334, 349–50 (M.D. Pa. 2000).

Zhou also notes that Trooper Hoy was "aware that [Zhou] was of Asian descent" when he initiated the traffic stop.  (Doc. 63 at 7).  We find any implied assertion that Trooper Hoy pulled over Zhou on account of his race to be wholly unsupported by the record.  Trooper Hoy recalled noticing Zhou's race prior to initiating the traffic stop.  (Doc. 56 at 105:20-23).  In an effort to communicate with Zhou in Chinese as accurately as possible, Trooper Hoy requested passenger Xu's translation assistance (as Xu was more fluent in English than Zhou) and employed a Google translate mobile phone application.  Zhou, 2018 WL 1858187, at *2; (Doc. 56 at 105:24-107:18).  The entire traffic stop was captured by the patrol car's dashboard camera, and the surveillance video reveals absolutely no indication of racial animus on the part of Trooper Hoy.  (See Ex. 1).  Trooper Hoy's observation that Zhou was of Asian descent is insufficient to warrant production of Central Shield Unit statistics.

### B. Canine Training Records and Certification Reports

A canine's "satisfactory performance in a certification or training program" may constitute sufficient reason to trust its alert for narcotics.  Florida v. Harris, 568 U.S. 237, 246 (2013).  Circumstances surrounding the alert in a particular case may undermine the government's case for probable cause even when a generally reliable dog conducts the sniff, *e.g.*, if an officer inadvertently cues the dog.  Id. at 247.  A defendant "must have an opportunity to challenge . . . evidence of a dog's

5

reliability" through cross-examination of a testifying officer or introduction of fact or expert witnesses. Id.

To support his request for documents related to the dog sniff on October 31, 2017, Zhou provides a "Certification" of retired police lieutenant Ambrose Verrone ("Verrone"). (Doc. 63-1). Therein, Verrone claims that Canine Tom "at no time exhibited a positive indication for the existence of narcotics"; that the signals Trooper Tiracorda observed are "inconsistent with the training methods in which a canine is taught" to alert for the presence of narcotics; and that Canine Tom only displayed a traditional indication of sensing narcotics once inside the U-Haul truck's cargo area. (Id. ¶ 5(d)-(e), (h)). Verrone concludes by stating that he cannot provide an expert opinion on the propriety of the dog sniff without the requested training, certification, and search history items. (Id. ¶ 6).

The parties do not dispute that Zhou failed to challenge the dog sniff in his initial motion to suppress or at the March 2018 suppression hearing. (See Doc. 63 at 2; Doc. 64 at 3; see generally Docs. 32, 32-1, 56). The government provided Trooper Tiracorda's narrative of the dog sniff and a "Drug Detector Dog Certification" for Trooper Tiracorda and Canine Tom. (See Ex. 4 at 7; Ex. 6; Doc. 56 at 109:2-14). Trooper Tiracorda was also made available for examination at the hearing. (Doc. 64 at 3-4 n.2). Prior counsel for Zhou indicated on the record that "if we got to a point where it's legal for the dog to be there," then the portion of the surveillance video involving the dog sniff "is irrelevant." (Doc. 56 at 58:3-25). We note that the government cites no authority that explicitly precludes Zhou from now raising this issue, nor does the government argue Zhou has waived his right to challenge the

propriety of the dog sniff. (See Doc. 64). However, we will deny Zhou's request for documents appertaining the dog sniff for the reasons discussed below.

Federal Rule of Criminal Procedure 16 outlines disclosure obligations for parties in a criminal case. The government must permit the defendant, upon request, to inspect and copy documents, objects, and reports of examinations and tests that are "within the government's possession, custody, or control." FED. R. CRIM. P. 16(a)(1)(E), (F)(i). Any item sought must also either be material to the preparation of the defense or intended for use during the government's case-in-chief.[3] FED. R. CRIM. P. 16(a)(1)(E)(i)-(ii), (F)(iii).

The government avers that none of the requested documents are in its possession or control. (Doc. 64 at 7). Specifically, the government notes that the Pennsylvania State Police have exclusive custody and control over the training and certification records for Canine Tom and Trooper Tiracorda as well as any statistical records concerning traffic stops by Pennsylvania state troopers. (Id.) Zhou does not address this argument, nor does he argue that the government has a duty to disclose such items under a theory of constructive possession. (See Doc. 63). Under the present circumstances, we find that Rule 16 does not compel the

---

[3] The Third Circuit has not considered whether the materials Zhou seeks are discoverable under Rule 16. Following the Supreme Court's decision in Harris, at least one circuit court has held that a defendant is entitled to discovery of training and certification records of a narcotics dog under Rule 16(a)(1)(E) for purposes of a pretrial evidentiary hearing. United States v. Soto-Zuniga, 837 F.3d 992, 1001 (9th Cir. 2016) (citations omitted). Zhou does not presently request materials related to the dog sniff in connection with a motion to suppress.

government to disclose the materials Zhou seeks, in particular because the government does not possess them.

## III. Conclusion

For all of these reasons, we will deny Zhou's motion (Doc. 63) to compel discovery. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     January 18, 2019